**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael DOBISH, Defendant–Appellant.**

**No. 95–2183.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1996.

Decided Nov. 19, 1996.*

---

* This decision was originally issued as an "unpublished opinion" filed on November 19, 1996.

David Debold (argued and briefed), Blondell Morey, Asst. U.S. Attorney, Office of the U.S. Attorney, Detroit, MI, for Plaintiff-Appellee.

Richard M. Helfrick (argued), Stacey M. Studnicki (briefed), Federal Public Defenders Office, Detroit, MI, for Defendant-Appellant.

Before: NELSON and NORRIS, Circuit Judges; HIGGINS, District Judge.**

PER CURIAM.

Michael Dobish here appeals a 60–month prison sentence for mail fraud. Citing four alleged errors in the calculation of his guideline sentence range, Mr. Dobish contends that the district court erred in (1) making a "vulnerable victim" enhancement in the offense level; (2) enhancing the offense level for abuse of a position of trust; (3) "double counting" by using both of the foregoing enhancements; and (4) calculating the loss without allowing credit for amounts repaid to the victims. Mr. Dobish also contends that the district court abused its discretion in departing upward from the guideline range. Finding none of these contentions persuasive, we shall affirm the sentence.

## I

In 1984 Michael Dobish embarked on a decade-long scheme through which members of his own family and others were defrauded of over one million dollars. Falsely claiming that he operated an investment firm, Mr. Dobish lied about his training and credentials and promised lucrative financial returns if his victims would invest with him.

Mr. Dobish obtained $1,118,237 without putting any of the money to work for his investors. He kept the scam going with periodic assurances that the "investments" were profitable and with paybacks totaling $353,275 to those who pressed him for a return. The scheme finally collapsed in 1994, when Dobish found himself unable to satisfy an increasing number of demands for repayment.

Pursuant to a revised plea agreement, Mr. Dobish pleaded guilty to one charge of violating the mail fraud statute, 18 U.S.C. § 1341. He was sentenced under the 1994 version of the Sentencing Guidelines Manual, with his base offense level being fixed at 6 pursuant to U.S.S.G. § 2F1.1. The court imposed a 2–level enhancement for vulnerable victims, a 2–level enhancement for abuse of a position of trust, a 2–level enhancement for more than minimal planning and multiple victims, and an 11–level enhancement for a loss of more than $800,000. With a 2–level reduction for acceptance of responsibility, this resulted in an adjusted offense level of 21. Given Mr. Dobish's lack of prior convictions, an offense level of 21 would have resulted in

** The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation.

a guideline range of imprisonment for 37–46 months.

The court decided to depart upward from this range, based on three factors: (1) the nonmonetary harm and serious psychological injury suffered by the victims; (2) the jeopardizing of the victims' solvency; and (3) the repetitive and prolonged nature of the defendant's crimes. Concluding that these factors warranted a four-level increase in the offense level—an increase yielding a guideline range of 57–71 months—the court imposed the maximum sentence permitted under 18 U.S.C. § 1341, five years (60 months).

## II

■ In the proceedings before the district court, Mr. Dobish did not object to the enhancements for vulnerable victims and abuse of a position of trust. He has therefore waived these objections. See *United States v. Cullens,* 67 F.3d 123, 124 (6th Cir. 1995). He has preserved, however, his argument that the use of both enhancements constituted double counting—*i.e.,* that the two enhancements "both are premised on the same conduct." *United States v. Haines,* 32 F.3d 290, 293 (7th Cir.1994). Double counting "occurs when identical conduct is described in two different ways so that two different adjustments apply." *Id.*

■ The parties agree that double counting does not necessarily result from use of both the vulnerable-victim and abuse-of-position-of-trust adjustments. See *Haines,* 32 F.3d at 293 (applying both adjustments where a home care provider defrauded an 87–year–old woman who was under the provider's care and who was incapable of caring for herself or her finances); *United States v. Stewart,* 33 F.3d 764 (7th Cir.1994) (applying both adjustments in an insurance scam where elderly persons were targeted as part of the scheme); and *United States v. Shyllon,* 10 F.3d 1 (D.C.Cir.1993) (applying both adjustments where a municipal tax auditor defrauded immigrants), *cert. denied,* 510 U.S. 1206, 114 S.Ct. 1327, 127 L.Ed.2d 675 (1994). We believe that both enhancements were properly applied in the case at bar.

The enhancement for vulnerable victims focuses on the choice of victims. Mr. Dobish selected his victims for their presumed susceptibility to his scheme; there was a nexus between the victims' status and their selection as targets. The enhancement for abuse of a position of trust, in contrast, focuses on the offender's post-selection conduct. An investment manager normally occupies a position of trust. Mr. Dobish constructively held such a position, based on his own representations, and he abused that position to defraud his victims.

There was no double counting in this case. Mr. Dobish could have selected the same victims without abusing a position of trust if, for instance, he had not lied about his business connections and experience. He *could* have selected victims who were not unusually vulnerable, conversely, while abusing a position of trust created by misrepresenting himself as an experienced and qualified investment manager. Mr. Dobish's crime combined both elements.

## III

■ Mr. Dobish argues that the district court erred in refusing to reduce the loss by the amounts returned to the victims. In order to keep his scam alive, as we have said, Mr. Dobish returned a total of $332,275. Subtracting this amount from the full $1,118,237 that was "invested" would result in an offense level enhancement of ten rather than eleven.

The Commentary to U.S.S.G. § 2F1.1 requires that the loss calculation be based on "intended loss" if an intended loss can be determined and if it is greater than the actual loss. See U.S.S.G. § 2F1.1, Application Note 7. As we read the transcript of the sentencing hearing, the district court found that Mr. Dobish intended to inflict a loss of about $1,118,000. The court also found that money was returned only as a means of perpetuating the fraud, and that the scheme would have been continued indefinitely had the victims not discovered what was going on. We cannot say that these findings were clearly erroneous, and we accept them as justification for the district court's loss calculation. See *United States v. Parrish,* 84 F.3d

816, 819 (6th Cir.1996)(a sentencing court's factual findings are upheld unless clearly erroneous).

## IV

 The challenge to the upward departure is also unavailing. In *Koon v. United States,* ―― U.S. ――, ――, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996), the Supreme Court held that a district court's decision to depart from the guidelines is subject to review only under an abuse of discretion standard. This standard must be used because district courts "have an institutional advantage over appellate courts" in determining whether a given case falls outside the "heartland" of guidelines cases. *Id.* We read *Koon* as a reminder to the courts of appeals to refrain from micromanaging the sentencing decisions of district judges.

No abuse of discretion occurred here. Application Note 10 to § 2F1.1 lists as a justification for departure each of the reasons relied on by the district court.[1] The district court heard at sentencing from numerous victims of Mr. Dobish's crime, and a number of letters from victims were incorporated into the record by stipulation. The testimony of the victims provided adequate support for the court's decision to depart.

In *United States v. Benskin,* 926 F.2d 562 (6th Cir.1991), this court upheld a departure that effectively doubled the defendant's sentence under circumstances similar to those presented in the case at bar. Mr. Benskin perpetrated an investment scam over the course of four and one half years, eventually bilking about six hundred investors of some $3.8 million. *Id.* at 563. The defendant's guideline sentence range was 27–33 months—but the number of investors, the prolonged and repetitive nature of the scam,

the extensive scope of the fraud, the large loss involved, and the psychological impact on the victims were held to justify an upward departure to the statutory maximum of five years. *Id.* at 565.

Mr. Dobish's scam lasted twice as long as Mr. Benskin's. It was similarly repetitive, it involved a loss that was smaller but still comparable, and it produced psychological trauma at least as serious. The departure in the case at bar is smaller—both relatively and absolutely—than the departure in *Benskin.* If there was no abuse of discretion in *Benskin,* there was none here.

**AFFIRMED.**

---

1. "In cases in which the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted. Examples may include the following:
   "(a) a primary objective of the fraud was nonmonetary; *or the fraud caused or risked reasonably foreseeable, substantial non-monetary harm;*
   \*   \*   \*   \*   \*   \*

"(c) *the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma;*
   \*   \*   \*   \*   \*   \*
"(f) *the offense involved the knowing endangerment of the solvency of one or more victims.*" U.S.S.G. § 2F1.1, Application Note 10 (emphasis added).