**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Patrick CORRIGAN (96–5477);
John Austin Bennett (96–5478/5486),
Defendants–Appellants.**

**Nos. 96–5477, 96–5478 and 96–5486.**

United States Court of Appeals,
Sixth Circuit.

Argued April 22, 1997.

Decided Oct. 15, 1997.

---

Robert J. Washko, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Nashville, TN, for Plaintiff–Appellee.

Mark C. Scruggs (argued and briefed), Law Office of Mark C. Scruggs, Nashville, TN, for Defendant–Appellant Michael Patrick Corrigan.

Kirk J. Kavanaugh (argued and briefed), Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendant–Appellant John Austin Bennett.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendants John Bennett and Michael Corrigan appeal their convictions and sentences following guilty pleas to charges of mail fraud, money laundering, and aiding and abetting. These charges relate to Defendants' participation in three fraudulent schemes. Each Defendant appeals the district court's grant of an upward departure from the Sentencing Guidelines based on the monetary loss, number of victims, and number of fraudulent schemes. We find that the reasons cited by the district court do not support an upward departure from the Sentencing Guidelines. We, therefore, vacate both Defendants' sentences and remand for resentencing.

## I.

### A.

Defendants created three fraudulent schemes which serve as the basis of their convictions. Defendants first created "Courtesy Consumer Association" in 1993. Defendants offered credit cards, low cost life insurance, financial planning, auto leasing, long distance service and mortgage loans. Defendants offered credit cards and low cost life insurance for an initial annual fee of $39. The fee for each successive year was $94. Defendants also claimed that financial planning, long distance service, and mortgage loans were available regardless of the applicant's credit history. These services were offered through telemarketers who were unaware that the scheme was fraudulent. Defendants did not have the capital nor the ability to provide any of the services that they purportedly offered.

Following calls from telemarketers, approximately 6,202 people submitted applications along with cashiers' checks or money orders. The amount of loss from Courtesy Consumer Association was approximately $570,000.

In December 1993 Defendants began a second scam known as "TaTa Investment Corporation." Defendants maintained that the venture was an investment group set up to assist Victoria Escobar, the wife of drug lord Pablo Escobar, in the liquidation of Pablo Escobar's estate. TaTa Investment Group did not have any authority to represent the Escobar estate. Defendants created a prospectus which offered investors the opportunity to purchase investment units of $75 or $99. Defendants maintained that the investment units would be worth between $8,000 and $12,000 once Escobar's assets were liquidated. At the time the government shut down the scheme, applications for the investment units totaled $30,000.

In April 1994 Defendants began a third plan. Using a portion of the Consumer Courtesy Corporation Association funds as start-up capital, Defendants began a 1–900 telephone sex operation. To earn capital for the venture Defendants created the "Worldwide Indian Lottery." Potential investors were solicited and informed that a Japanese company had sold 50,000 positions in the lottery and that $6 million had been raised. Defendants maintained that the proceeds from the lottery would benefit poor Native Americans and that a Native American tribe had agreed to operate the lottery. From

September 1994 until Defendants' arrest in February 1995, the Worldwide Indian Lottery raised revenues of approximately $2.5 million.

### B.

Defendants were charged in a sealed 25–count indictment in the United States District Court for the Middle District of Tennessee with various charges of mail fraud and money laundering. Corrigan (who was a fugitive) was arrested on February 22, 1995, while attempting to re-enter the United States from the Bahamas. Bennett was arrested on February 27, 1995.

On July 24, 1995, Bennett pled guilty, pursuant to a Rule 11 plea agreement, to 17 counts of mail fraud, in violation of 18 U.S.C. § 371, and two counts of money laundering, in violation of 18 U.S.C. §§ 1956, 1957.

Bennett was also charged in a three-count indictment, filed in the United States District Court for the Southern District of Ohio, with two counts of interstate transportation of money taken by fraud, in violation of 18 U.S.C. § 2341, and one count of conspiracy, in violation of 18 U.S.C. § 371. These charges arose from the Worldwide Lottery scheme. The information was transferred to the United States District Court for the Middle District of Tennessee for consolidation with Bennett's other charges. The district court imposed an upward departure from the guidelines range of three offense levels. Bennett was sentenced to 72 months imprisonment and 3 years supervised release. He was also required to pay restitution of $500,-000, a fine of $125,000, and a special assessment of $150.00.

Pursuant to a Rule 11 plea agreement, Corrigan pled guilty to 17 counts of mail fraud, in violation of 18 U.S.C. § 371, and two counts of money laundering, in violation of 18 U.S.C. §§ 1956, 1957. The district court also upwardly departed three levels from the Sentencing Guidelines based on the amount of loss, number of victims, and number of fraudulent schemes. Corrigan was sentenced to 121 months imprisonment and three years supervised release. He was also assessed a fine of $1,100.00. Corrigan is still

under investigation for activity in the Southern District of Ohio.

### II.

On appeal we address two issues: whether the district court erred in imposing a three-level upward departure from the Sentencing Guidelines when sentencing each Defendant; and whether the district court erred in denying Defendant Corrigan a three-level reduction for acceptance of responsibility.

### III.

We first turn to the issue of the upward departure. Upward departures from the guidelines are permitted where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). In determining whether a departure should be granted the sentencing court should ask four questions:

1) What features of this case, potentially, take it outside of the Guidelines' "heartland" and make of it a special, or unusual case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

*Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (citing *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)). If the basis for the departure is a discouraged factor, or an encouraged factor, or a factor already taken into account by the Guidelines, the court should only depart if the factor is present to an exceptional degree. *Id.* This court reviews the district court's ruling concerning a departure for abuse of discretion. *Id.* at ——, 116 S.Ct. at 2047.

Defendants maintain that the district court abused its discretion in granting *sua sponte* a three-level upward departure from each Defendants' guideline range. Defendant Bennett argues that the district court erred in upwardly departing based on the number of victims and number of fraudulent schemes.

Defendant Corrigan contends that the district court erred in upwardly departing based on the number of victims and the amount of loss.

■ On appeal, if this court determines that any one of the reasons offered by the district court supports an upward departure, the convictions can be affirmed on that basis. "A sentence ... can be 'reasonable' even if some of the reasons given by the district court to justify the departure from the presumptive guidelines range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure." *Williams v. United States*, 503 U.S. 193, 203–05, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992); *see also United States v. Hart*, 70 F.3d 854, 862 (6th Cir.1995) (stating that as long as one of the reasons offered by the district court to justify the upward departure passes muster, the departure should be upheld), *cert. denied*, —— U.S. ——, 116 S.Ct. 1368, 134 L.Ed.2d 534 (1996). We address each basis given by the district court in turn.

### A.

■ The first reason given by the district court was the amount of loss. The Sentencing Guidelines for fraud are found in section 2F1.1.[1] Each Defendants' Presentence Investigation ("PSI") report stated that the amount of loss was greater than $2,500,000 but less than $5,000,000. Based on the amount of loss each PSI report suggested a base offense level increase of 13 points.

The Sentencing Guidelines carve out a heartland of fraud losses which include losses of $2,000 or less and losses greater than $80,000,000. Any loss within this parameter is within the Guidelines' heartland. It is apparent that the Sentencing Commission took the amount of loss at issue in this case into consideration when it formulated the Guidelines because the Guidelines prescribe an offense level increase which reflects this amount. The amount at issue is at the high end of the amounts listed in the Guidelines, but nevertheless this amount is squarely within the Guidelines' heartland. Because the amount of loss is within the Guidelines' heartland it is not necessary to examine the remaining *Koon* factors. The amount of loss is not exceptional or unusual and does not support an upward departure.

### B.

■ We now turn to the second reason offered by the district court: the number of victims. This circuit and the Fifth Circuit have permitted departures based on the number of victims of a particular fraudulent scheme. The Second, Third, and Seventh Circuits have disallowed upward departures based on the number of victims.

In *United States v. Benskin*, 926 F.2d 562 (6th Cir.1991), the Defendant formed an investment and insurance company and began "selling" insurance. *Id.* at 563. The Defendant solicited over $3.8 million from approximately 600 investors and used these funds for his personal benefit. *Id.* On appeal, this court affirmed the district court's upward departure finding that it was acceptable because of the psychological harm suffered by the victims who included elderly and disabled persons. *Id.* at 566. The district court relied on the *Benskin* decision as authority for the upward departure in this case.

In *United States v. Dobish*, 102 F.3d 760, 763 (6th Cir.1996), this court affirmed an upward departure based on the amount of loss, repetitiveness of the crime, and psychological trauma to the victims. The Defendant falsely claimed that he owned an investment firm and defrauded his victims out of over one million dollars. This court affirmed the upward departure finding that the psychological harm to the victims justified the upward departure. *Id.* at 763. In affirming the upward departure, this court noted that the import of the *Koon* decision is that courts of appeals should refrain from micromanaging the decisions of sentencing judges. *Id.*

With the admonishment of the *Dobish* court in mind, we turn to the upward depar-

---

1. The Presentence Investigation ("PSI") report for each Defendant states that the 1994 version of the *Guidelines Manual* was used in calculating each Defendants' sentence. Therefore, all references to the Sentencing Guidelines are to the *Guidelines Manual* effective November 1, 1994.

ture granted in the instant case. The number of victims is adequately considered in the Sentencing Guidelines dealing with fraud. It is considered implicitly through the loss amount in U.S.S.G. § 2F1.1(b)(1) and explicitly in U.S.S.G. § 2F1.1(b)(2)(B) which permits an offense level increase of two points when the scheme defrauds more than one victim. The number of victims is not a factor which takes this case out of the Guidelines' heartland because the Guidelines have provisions for the large number of victims in a particular fraud case. There is no aggravating factor in this case which makes the number of victims a peculiar factor.

■ The district court erroneously characterized the fraud 'heartland' as one victim. In examining the fraud guidelines as a whole, it does not appear that the heartland carved out by the Guidelines was intended to include only one victim. It is inconceivable that a provision which calculates loss levels of up to $80,000,000 would consider only one victim. A loss figure this great presupposes a large number of victims. While it is possible that a defendant could defraud one person out of thousands or even a few million dollars, it does not seem likely that one person could be defrauded out of $80 million. Even accepting that one person could be defrauded out of such a large amount, such a fraud would be the atypical case and the Sentencing Guidelines were set up to deal with a range of typical realistic cases. The fraud guidelines do not indicate that the fraud heartland only involves one victim.

The number of victims is subsumed by the loss figures found in U.S.S.G. § 2F1.1. It is inconceivable that loss figures of $80,000,000 would be implemented without the consideration that the number of victims would be large. Similarly, it is important to note that the number of victims is not included in the commentary to the fraud guidelines which notes instances when an upward departure may be warranted. *See* 1994 U.S.S.G. § 2F1.1, Application Note 10. It is significant that a factor as important as the number of victims was not listed as a basis for a valid departure.

This court's decisions in *Benskin* and *Dobish* are distinguishable from the instant case because in each case the upward departure was not based merely on the large number of victims but rather on the psychological harm to the victims. *Benskin*, 926 F.2d at 565; *Dobish*, 102 F.3d at 763. Psychological harm is a factor which could possibly take a case out of the fraud heartland. However, there has not been any allegation of psychological harm in the instant case. There is nothing exceptional about the number of victims in the instant case which justifies an upward departure.

The number of victims defrauded by the Defendants, while large, does not take this case out of the Guidelines' heartland for fraud. There is nothing unusual about the number of victims in this case which makes it exceptional. In so noting we join the majority of the circuit courts which have addressed this issue and have determined that the number of victims is not a valid reason for an upward departure in a case involving a fraud offense. *See United States v. Copple*, 24 F.3d 535, 548 (3d Cir.1994); *United States v. Boula*, 932 F.2d 651, 657 (7th Cir.1991); *United States v. Mandel*, 991 F.2d 55, 58 (2d Cir.1993). We decline to follow the precedent of the Fifth Circuit which has permitted upward departures based on the number of victims. *See United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir.1993); *United States v. Barakett*, 994 F.2d 1107, 1113 (5th Cir.1993).

### C.

■ The district court also departed upwardly based on the number of fraudulent schemes. The district court stated that the Defendants had been involved in at least three but possibly five or six scams. The number of fraudulent schemes is a factor that is taken into account under the more than minimal planning provision found in U.S.S.G. § 2F1.1(b)(2)(A). This section permits a two level offense increase for offenses involving more than minimal planning. In the application notes for this section, the Commission refers to the more than minimal planning definition found in the Commentary for section 1B1.1. In this Commentary, the Commission stated, " '[m]ore than minimal planning' means more planning than is typical for commission of the offense in a simple

form .... [it] is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." 1994 U.S.S.G. § 1B1.1, Application Note 1(f). The number of fraudulent schemes is a factor that was taken into account under the more than minimal planning provision. Thus, in order for a departure to be based on more than minimal planning, the factor must be present to a greater extent than the ordinary case where several schemes are present. *Koon,* —— U.S. at ——, 116 S.Ct. at 2045.

The number of fraudulent schemes is a factor that was considered by the Guidelines and there is nothing exceptional about the Defendants' schemes in the instant case. It is true that the Defendants engaged in several illegal schemes at the same time but there is nothing exceptional or atypical about this fact. The number of fraudulent schemes does not support an upward departure. *See United States v. Alpert,* 28 F.3d 1104, 1109 (11th Cir.1994) ("[t]he circumstances the district court cited as a reason for an upward departure, rather than being factors not adequately considered by the Sentencing Commission are the 'primary factors' that formed the basis for the specific offense characteristics contained in [U.S.S.G.] § 2F1.1.").

Each basis cited by the district court as grounds for departure, amount of loss, number of victims, and number of fraudulent schemes, is a factor that is reflected in the Sentencing Guidelines. Thus in order for any of these factors to be the basis for upward departure, the factor must be present to a greater extent than in the typical fraud case. Such is not the case here. There is nothing particular or exceptional about the amount of loss, number of victims. and number of fraudulent schemes in this case which makes it more egregious than the typical case in which these factors are present. *Koon,* —— U.S. at ——, 116 S.Ct. at 2045. While this court does not deny the seriousness of the crimes of which Defendants were convicted, we find that the Sentencing Guidelines adequately punish these wrongs without the need for an upward departure. Upward departures are rare and reserved for the unusual case. None of the

factors present in this case satisfy this atypicality standard. The district court abused its discretion in imposing an upward departure.

## IV.

We now turn to the issue of acceptance of responsibility. Defendant Corrigan argues that the district court erred in granting him a two-level reduction for acceptance of responsibility, rather than a three-level reduction. The district court's decision whether to grant a reduction for acceptance of responsibility is reviewed for clear error. *United States v. Wilson,* 878 F.2d 921, 923 (6th Cir.1989). "Because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area." *Id.*

Section 3E1.1(b) of the Sentencing Guidelines permits a defendant who has accepted responsibility for his offense to receive a decrease in offense level by one additional point for "super acceptance" of responsibility if the offense level is greater than 16 prior to any reduction for acceptance of responsibility, the defendant has qualified for a reduction under 3E1.1(a), and the defendant has either provided the government with complete information concerning the defendant's involvement in the offense or notified the authorities of an intent to plead guilty. 1994 U.S.S.G. § 3E1.1(b). This base offense level reduction is in addition to the two-level reduction allowed by section 3E1.1(a) of the Sentencing Guidelines for acceptance of responsibility.

The district court declined to grant Corrigan an additional reduction for acceptance of responsibility because it found that he had obstructed justice because he wrote a letter to Defendant Bennett while in prison and urged Bennett not to cooperate with the government in their investigation of the Defendants' schemes. As a result, Corrigan was given a two-level sentence enhancement for obstruction of justice. The application notes which accompany section 3E1.1 state that ordinarily a defendant who has received an enhancement for obstruction of justice is not entitled to a reduction for acceptance of

responsibility unless extraordinary circumstances exist. 1994 U.S.S.G. § 3E1.1, Application Note 4.

We conclude that the district court erred in declining to determine whether Corrigan was entitled to an additional one point reduction under section 3E1.1(b). The district court gave Corrigan a two-level reduction for acceptance of responsibility although Corrigan also received a two-level enhancement for obstruction of justice. This infers that the district court determined that this case was an extraordinary situation in which the defendant was entitled to both an obstruction of justice enhancement and an acceptance of responsibility reduction, as discussed in Application Note 4. The district court should have also determined whether Corrigan was entitled to the additional point reduction of "super acceptance" of responsibility. The district court's refusal to determine whether Corrigan qualified for the additional point reduction was clearly erroneous. Corrigan met the requirements for a determination of whether he qualified for an additional point reduction because prior to his base offense level reduction under 3E1.1(a), his offense level was greater than level 16.

## V.

The district court erred in imposing an upward departure in this case. The factors on which the departure was based are adequately taken into account by the Sentencing Guidelines and there is nothing in the facts of this case which makes it atypical or takes it outside of the Guidelines' "heartland." In addition, the district court erred in refusing to give Corrigan an additional point reduction for "super acceptance" of responsibility. For the reasons stated herein, we **VACATE** the Defendants' sentences and **REMAND** for resentencing.