NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0670n.06

No. 15-4200

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 14, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| JASON COX, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:     BATCHELDER, STRANCH, and DONALD, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Jason Cox pled guilty to several counts of mail fraud, wire fraud, and money laundering and was sentenced to sixty months' imprisonment and ordered to pay restitution.  In this appeal, Cox challenges the length of his sentence and the restitution amount.  For the following reasons, we AFFIRM Cox's sentence.

## I.     BACKGROUND

Jason Cox worked as an investment advisor with Edward Jones at the time of his fraudulent activities.  Around that time, he also developed a gambling addiction and began gambling heavily, and he fraudulently acquired funds from three of his clients to pay the debts he incurred.  In his position as an investment advisor, Cox was "subject to little oversight with respect to the handling of his clients' financial accounts."  Cox repaid the principal plus the promised interest to two of his clients before his arrest.

The third client that Cox defrauded, Jodene Beavers, was a developmentally disabled woman in her fifties. Cox became the advisor for Beavers's father, and was introduced to her as "the person she could trust to manage her money after [her father] was no longer able to do so." Before Beavers's father's death, he paid her bills, paid the mortgage on her condo in Upper Arlington, Ohio, and provided her with financial assistance, as she was rarely employed. He also established a joint account that could have provided enough money to support her for most, if not all, of her life. Upon her father's death, Beavers inherited all of his assets. As Beavers relied heavily on her father and had difficulty understanding the responsibilities of managing an estate, her estate's executor spoke with Cox several times about the importance of ensuring that her funds last as long as possible.

Over the next two years Cox took nearly all of Beavers's money. Cox sold the holdings in the IRA account opened by Beavers's father that was worth $164,000; as Beavers received checks, Cox convinced her to write checks to him in amounts equal to or slightly lesser that the amounts she received. He told her that he was "investing the money in mutual funds for her" and that they were in a "joint business venture." He caused Beavers to sell her condo, contacted the real estate agent, and was present throughout the process. He convinced her to move into an apartment in Whitehall, Ohio where he prepaid the rent, and "she was forced to leave a couch and small refrigerator in her home which she really wanted to keep." In her new apartment, Beavers heard gunshots that caused her to have panic attacks, insomnia, and fear of walking outside in the area. She also contracted scabies and was told there were bedbugs in her building.

Cox was charged with multiple counts of mail fraud, wire fraud, and money laundering. He pled guilty to two counts of mail fraud, one count of wire fraud, and two counts of money laundering, and agreed to pay restitution to Beavers. The Pre-Sentence Report (PSR)

recommended a total offense level of twenty-two, based on a loss range between $400,000 to $1,000,000. The PSR calculated the base offense level at seven, increased by fourteen levels for the loss amount, two levels for Beavers's vulnerability, and two levels for abuse of trust. The level was decreased to twenty-two for acceptance of responsibility.

In the plea agreement, however, both Cox and the Government argued in favor of applying a lower loss range of $200,000 to $400,000, which would lead to a total offense level of twenty. The probation officer, as well as the parties and the court, based this lower range in part on new Guidelines that would be in effect soon, increasing the loss range for a twelve point enhancement to $250,000 to $550,000. In light of this, both parties and the district court agreed to a loss range of $200,000 to $400,000. And all agreed that a twelve level increase, instead of a fourteen level increase, was appropriate.

The restitution amount indicated in the PSR was $432,539, but before sentencing the Government submitted an addendum that adjusted that number due to a calculation error; the updated restitution figure was $412,252.85, consisting of $360,150 in cash and checks provided by Beavers, early distribution tax penalties of $22,244, wire transfer fees of $935, real estate fees of $5,688.65, and ATM withdrawals and debit card purchases of $23,235.20.

At sentencing, the court applied a criminal history category of II and an offense level of twenty for a Guidelines range of 37-46 months, and overruled Cox's objection regarding the abuse of trust enhancement. The court varied upward from the suggested range, imposed a sentence of sixty months, and granted restitution in the amount of $412,252.85.

Cox appeals various elements of his sentence. He argues that the district court erred in applying the abuse of trust enhancement, in accepting the government's restitution amount, and that his above-Guidelines sentence is both procedurally and substantively unreasonable.

## II.     ANALYSIS

### A.     The abuse of trust enhancement

A district court's determination that a defendant occupied a position of trust for the purposes of the Sentencing Guidelines is reviewed de novo. *United States v. Gilliam*, 315 F.3d 614, 617 (6th Cir. 2003) (citing *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir. 2000)).

The Guidelines authorize enhancement of an offense level in certain situations. "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." USSG § 3B1.3. The Guidelines define "a position of public or private trust" as "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *Id*. at cmt. n.1.

In determining whether or not the abuse of trust enhancement is appropriate, Sixth Circuit precedent directs courts to look at "the level of discretion accorded an employee" as "the decisive factor in determining whether his position was one that can be characterized as a trust position." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001) (citing *Tribble*, 206 F.3d at 637). The specific job must be "characterized by substantial discretionary judgment that is ordinarily given considerable deference." *Id*. (quoting *United States v. Ragland*, 72 F.3d 500, 503 (6th Cir. 1996)).

Cox argues that his position was not a position of trust and that the deceit that occurred was due to Beavers's credulity. Further, he distinguishes his position because he "solicited additional funds from his clients to invest in 'off the books' investments and continued even after

he was terminated from Edward Jones." The Government responds that in controlling investments and concealing the nature of his schemes, Cox had total authority to invest his victim's money. The Government also notes that Cox defrauded three non-disabled victims in addition to Beavers.

Cox had significant discretion to use his clients' money as he wished in his position as an Investment Advisor for Edward Jones. The PSR explained that Cox had very little oversight, and that lack of oversight permitted him to commit fraud relatively undetected by his employer. In light of this record, the district court's application of the two level abuse of trust enhancement was appropriate.

Cox also argues that it was double-counting for him to receive both the abuse of trust and the vulnerable victim enhancements. "Double counting 'occurs when identical conduct is described in two different ways so that two different adjustments apply.'" *United States v. Dobish*, 102 F.3d 760, 762 (6th Cir. 1996) (citing *United States v. Haines*, 32 F.3d 290, 293 (7th Cir. 1994)). In *Dobish*, we noted that double counting does not necessarily result when both the abuse of trust and vulnerable victim enhancements are applied. 102 F.3d at 762. "The enhancement for vulnerable victims focuses on the choice of victims" while the abuse of trust enhancement, "in contrast, focuses on the offender's post-selection conduct." *Id.* (finding that the defendant had both selected victims for their susceptibility and abused his position as an investment manager). Here too, Cox's seeming intentional selection of Beavers was in addition to, and distinct from, his abuse of his position of trust as an investment advisor. Thus, the district court did not err in applying both of these enhancements.

**B.      Calculation of restitution amount**

Cox argues that his restitution amount is too high because it was based on a loss amount that incorrectly included early distribution tax penalties, wire transfer fees, and real estate fees.

**1.      Standard of review**

As an initial matter, the parties dispute the appropriate standard of review for resolving this claim, and whether the claim was forfeited.  The district court's loss calculation is reviewed for clear error.  *United States v. Younes*, 194 F. App'x 302, 315 (6th Cir. 2006) (citing *United States v. Orlando*, 363 F.3d 596, 600–01 (6th Cir. 2004)).  We review forfeited arguments for plain error.  *United States v. Nazzal*, 644 F. App'x 655, 658 (6th Cir. 2016) (quoting *United States v. Evers,* 669 F.3d 645, 654 (6th Cir. 2012); *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015)).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Nazzal*, 644 F. App'x at 658 (quoting *United States v. Olano,* 507 U.S. 725, 733 (1993)).  For there to be plain error, Cox must show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'"  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (citation omitted).

**2.      Loss amount and restitution**

Cox was ordered to pay restitution to Beavers pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A and USSG § 5E1.1.  The Guidelines provision that is used to calculate loss for the purpose of determining the offense level is USSG § 2B1.1.  A comment to that section excludes from loss "interest of any kind, finance charges, late fees,

penalties, amounts based on an agreed-upon return or rate of return, or other similar costs."
USSG § 2B1.1 cmt. n.3(D)(i).

The original PSR recommended a total offense level of twenty-two, based on the loss amount of $432,539 (this number was lowered in a subsequent addendum) and the loss range of $400,000 to $1,000,000. Cox's counsel objected to the inclusion of fees and penalties in the loss amount in his Objections to the PSR.[1] If the fees and penalties had been removed, the loss would have been under $400,000; however, the parties reached an agreement to apply the lower loss range of $200,000 to $400,000 regardless. They did not appear to resolve whether or not fees and penalties should be included in the loss amount calculation. They simply agreed to the lower loss range, at least in part to take into account new Guidelines that would go into effect soon.

At sentencing, the parties and the court agreed to the lower loss range. Cox mentioned the issue of fees at sentencing in the context of describing, in part, how the parties reached the agreement regarding the lower loss range: "in negotiating the plea agreement, we looked to the amount of finance charges, late fees, other similar types of costs that the Guidelines specifically exempt from addition to computing what the loss is. So that's how we arrived at that figure between $200,000 and $400,000." (R. 63, PAGEID# 265). The Government said that it did not agree that fees are not part of the loss, noting that, in agreeing to the lowered range, it was recognizing that the Guidelines were changing soon. Finally, in regard to the amount of restitution, Cox stated at sentencing, "I don't disagree the $412,000 is the correct restitution figure. . . . That's a correct restitution figure." *Id*.

Cox now clarifies that he is not appealing the loss as it relates to the offense level. Rather, he is appealing the dollar amount of the loss that he alleges improperly included fees,

---

[1]The figures he objected to including were the early distribution tax penalties of $22,244, wire transfer fees of $935, and real estate fees of $5,688.65.

which was then used as the restitution amount. He acknowledges that restitution does not always need to equal loss, but argues that it should in this case. Cox further clarifies that the district court should have at least explained the restitution amount instead adopting it without discussion.

It is true that the loss amount should not include penalties or fees, and that the $412,252.85 amount does include them. The range actually adopted by the court ($200,000 to $400,000), however, reflected a number that did not include those penalties or fees and thus the loss amount, used as intended to calculate the sentencing level, did not in function include penalties or fees.

Restitution does not need to equal the loss amount. The parties pointed to few cases in this circuit, but *United States v. Rutley*, 482 F. App'x 175, 178–79 (7th Cir. 2012) is helpful. There, the defendant argued that interest must be excluded from his restitution amount because interest was not allowed to be included in the loss amount for sentencing purposes. The court stated:

> [N]o case law and nothing in the Mandatory Victim Restitution Act or the sentencing guidelines support [the defendant's] argument. Application Note 3(D)(i) to § 2B1.1 applies to the loss amount only. Restitution is calculated under 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, and those provisions do not exclude bargained-for interest (or finance charges) from a restitution award. *See United States v. Jimenez,* 513 F.3d 62, 87 (3d Cir.2008); *United States v. Morgan,* 376 F.3d 1002, 1014 (9th Cir.2004).

*Rutley,* 482 F. App'x at 179. Even if there were fees and penalties in the restitution amount, therefore, it does not mean that the restitution amount is erroneous.

The district court could have clarified these issues at the hearing, Cox argues, by explaining: (1) whether the court accepted the argument that loss should include fees and penalties *and* that restitution should equal loss, or (2) whether the court accepted Cox's argument that loss should not include fees *but* decided that restitution should reflect those charges. With the parties in apparent agreement about both the sentencing range and the restitution amount,

however, it may have been difficult for the court to know that it needed to explain this particular issue. The inclusion of fees in the restitution amount, or the court's failure to expound upon this issue at sentencing, does not rise to the level of plain error.

## C.     Reasonableness of Cox's sentence

Because Cox did not object to the selected Guidelines range independently, or in response to the *Bostic* question, the parties agree that this claim is unpreserved. We review unpreserved claims of procedural (or substantive) reasonableness for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004); *see United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008). "Sentences must be both procedurally and substantively reasonable." *United States v. Walters*, 775 F.3d 778, 781 (6th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Cox argues that his sentence is both procedurally and substantively unreasonable.

### 1.     Procedural reasonableness

A sentence is procedurally unreasonable if the district court commits a significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence— including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Cox first argues that the district court, in varying upward to a sentence of 60 months, actually (or accidentally) assessed the variance from a previously rejected sentencing range of 46-57 months. The agreed upon sentencing range was 37-46 months, and during the hearing, the court stated numerous times that it was using that range. As Cox notes, the court did state once that it was going to "vary under 3553(a) to an amount just slightly above what [the probation officer] had originally computed as the sentencing guideline range." (R. 63, PageID# 297).

But the district court made its decision clear in repeatedly referencing the chosen range, then expressly noting how it reached the sixty month figure.

Cox also argues that the court failed to explain the upward variance and notes that though the court stated the loss did not capture the essence of the offense, Cox did receive a two level enhancement for targeting a vulnerable victim. The Government responds that the district court adequately explained its decision to impose an above-Guidelines sentence, in that it considered Cox's childhood, employment history, and addiction, as well as the severity of the crime and other factors.

Cox points to *United States v. Blackie*, 548 F.3d 395 (6th Cir. 2008), as a similar case where the district court was "ambiguous about the exact nature of the new offense level and the Guidelines range at sentencing." However, in *Blackie*, the court never stated the applicable range at all, nor explained how it reached its sentence. 548 F.3d at 401. Here, however, the court stated the range and also considered Cox's "very, very troubling" conduct, the fact that Beavers is left with "essentially no assets," and the conclusion that this was "about as most serious a financial offense as one can imagine." The court discussed Cox's minimal criminal history, addiction, his years of gainful employment, and that the "physical abuse" he suffered as a child at the hands of his step-father was "not something that should be ignored in a court of justice." The district court sufficiently explained its reasons for varying upward in determining Cox's sentence. There is no plain error in the sentence.

### 2.      Substantive reasonableness

"The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan–Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). Courts must "take

into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. A sentence may be substantively unreasonable if the district court "fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Griffin*, 530 F.3d 433, 439–40 (6th Cir. 2008) (alterations in original) (citation omitted). The fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Cox argues that the court placed too much weight on one 18 U.S.C. § 3553(a) factor, the seriousness of the crime, and failed to consider other relevant factors, such as his history, cooperation with the prosecution, and willingness to repay Beavers.

At the sentencing hearing, the court discussed the nature of the offense and Cox's "very, very troubling" conduct, as well as his criminal history, noting that he tended towards the low end of criminal history and that his two DUIs may show an addiction issue. § 3553(a)(1). The court also noted the physical abuse that Cox suffered as a child, the importance of protecting the public from further crimes, and of providing deterrence both to Cox and to society. § 3553(a)(2). The court described the kinds of sentences available and the sentencing range, and indicated that Cox should be considered as a candidate for the Residential Drug Abuse Program because of "substantial untreated addiction." § 3553(a)(3) and (4). And finally, the court discussed the need for restitution. § 3553(a)(7). The court might have addressed more specifically the Guideline policy statements and the need to avoid unwarranted sentencing disparities. § 3553(a)(5) & (6). However, because courts do not require a "ritualistic incantation of the § 3553(a) factors," the sentence was reasonable. *United States v. Chandler*, 419 F.3d 484, 487 (6th Cir. 2005) (quoting *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998)).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Cox's sentence.