*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: MARTIN MCNULTY,

               *Petitioner.*

                       No. 10-3201

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 09-00149—Herman J. Weber, District Judge.

Submitted: February 24, 2010

Decided and Filed: March 1, 2010

Before: KEITH, MARTIN, and CLAY, Circuit Judges.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. This petition for a writ of mandamus arises from the proceedings in *United States v. Arctic Glacier Int'l Inc.*, No. 1:09-cr-00149 (S.D. Ohio). In that case, Arctic Glacier International was charged in a criminal information with violating 15 U.S.C. § 1 by participating in "a conspiracy to suppress and eliminate competition by allocating packaged-ice customers in southeastern Michigan and the Detroit, Michigan metropolitan area." (Tr. at 7) Petitioner Martin McNulty seeks a writ of mandamus to enforce his rights as a victim of this conspiracy under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. For the reasons set forth below, we **DENY** the petition for mandamus relief.

## I.

Arctic Glacier International, Inc., the wholly-owned subsidiary of Arctic Glacier, Inc., which is the wholly-owned subsidiary of the Arctic Glacier Income Fund

1

(collectively referred to as "Arctic Glacier"), produces packaged ice and sells packaged ice in Canada and certain regions of the United States. Arctic Glacier has admitted to a felony offense of participating in a conspiracy to allocate customers of packaged ice sold in Southeastern Michigan and the Detroit, Michigan area beginning January 1, 2001 and continuing through at least July 17, 2007. Arctic Glacier stated that it engaged in discussions and meetings with representatives of other packaged-ice producers and agreed to allocate customers in those areas. According to the plea agreement that Arctic Glacier has reached with the government, sales of packaged ice affected by the conspiracy totaled $50.7 million.

According to his testimony before the district court, Martin McNulty was an executive for Party Time Ice, which was acquired by Arctic Glacier in December of 2004.[1] (Tr. at 29.) He alleges that, while working at Party Time, as early as 1997, he was told about the conspiracy to allocate customers. (*Id.*) He alleges that Party Time executive Chuck Knowlton informed him about the conspiracy and informed him that if McNulty were to leave Party Time, he could have been boycotted from employment anywhere in the packaged ice industry. (*Id.* at 30.) After Party Time was acquired by Arctic Glacier, McNulty alleges that he was instructed by Arctic Glacier executive Keith Corbin to participate in the customer allocation conspiracy and that Corbin threatened to arrange a boycott by the industry if McNulty refused to do so. (*Id.*) McNulty alleges that he refused to do so and expressed his opposition to the conspiracy. He alleges that Arctic Glacier fired him as a result of his refusal to participate in the conspiracy. (*Id.*) Following his termination from Arctic Glacier, McNulty signed an agreement with Arctic Glacier, titled "FULL AND FINAL RECEIPT, RELEASE, DISCHARGE AND NON-COMPETITION AGREEMENT." In addition to containing a six-month non-compete clause, the Agreement provides that in consideration of a severance payment, McNulty agreed not to sue Arctic Glacier or its employees with respect to any claims that he had prior to or as of the time that he signed the Release.

---

[1] McNulty was employed by Arctic Glacier from December 2004, when Arctic Glacier acquired Party Time, through late January 2005, at which time he was terminated and received a severance agreement from Arctic Glacier.

Shortly after his termination in late January 2005, McNulty contacted the government and served as an informant in the subsequent antitrust investigation of Arctic Glacier.[2]  (*Id.*)

He alleges that, later in 2005, after the non-compete clause expired, he began applying to other packaged-ice companies, but that he was unable to find employment with any company.  (*Id.* at 32.)  He asserts that "two individuals [] told him that he would not be able to obtain employment in the industry until he stopped cooperating with the government."  (*Id.*)  He alleges that, as a result of this "blackball[ing,]" his earnings have been substantially reduced, his house has been foreclosed upon, his credit scores have fallen, he has been unemployed for extended periods of time, and he remains unemployed.

In a related pending action, on July 23, 2008, McNulty filed a civil complaint in the United States District Court for the Eastern District of Michigan against three producers of packaged ice, including Arctic Glacier, and several of their executives. *McNulty v. Reddy Ice Holdings, Inc.*, Slip Copy, No. 08-cv-13178 , 2009 WL 1508381 (E.D. Mich. May 29, 2009).  The court succinctly described McNulty's claims as: "(1) Plaintiff was terminated for refusing to participate in the alleged unlawful collusion and (2) Defendants conspired against Plaintiff and effectively blackballed him from the packaged ice industry."  *Id.* at *6 (overruled on other grounds by *McNulty v. Reddy Ice Holdings, Inc., et al.* Slip Copy, No. 08-cv-13178 , 2009 WL 2168231 (E.D. Mich. July 17, 2009)).   In that litigation, Arctic Glacier has asserted that the "'decision [to terminate McNulty] was made as a result of the restructuring of the Corporate Marketing department,'" and has denied that its decision resulted from any "market allocation scheme." *Id.* (quoting January 27, 2005 termination confirmation letter to McNulty).

On September 20, 2009, the United States filed a sealed information charging Arctic Glacier with a conspiracy "to allocate packaged-ice customers in southeastern Michigan and the Detroit, Michigan metropolitan area."  On October 13, 2009, the

---

[2]He claims that he decided to go to the government shortly before he was terminated, but that he contacted them shortly after his termination.  (*Id.* at 32.)

United States filed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in which Arctic Glacier agreed to plead guilty to the above charge, the parties agreed to recommend a fine of $9 million, and the government agreed not to seek a restitution order.

The government informed McNulty, who had served as an informant during the assembly of the case, that he could request restitution through the probation officer. As per the probation officer's instructions, McNulty sent a letter and accompanying declaration to the probation officer on January 20, 2010 requesting $6.3 million in restitution and that he be recognized as a victim of Arctic Glacier pursuant to the CVRA. Those documents were provided to the district court.

On February 22, 2010, Judge Weber held a sentencing hearing at which McNulty moved for restitution pursuant to the CVRA and stated the basis for his claims. The district court noted that "Mr. Martin McNulty, a former employee of Arctic Glacier International, claims he is a victim because he refused to participate in the allocation conspiracy and was fired and blackballed in the ice business." (Tr. at 114.) The district court held that

> The Court determines the victims of the offense in this case were the customers. . . . Mr. McNulty was an employee of defendant, not a customer. There is no evidence he was directly or proximately harmed by the conspiracy. The cou[n]t [] of conviction is a violation of 15,000 -- or of 15 United States Code, Section 1, which is not a listed offense under 18 United States Code, Section 3663(a)(1)(A). He is not a victim of the offense charged in this case.

(Tr. at 117.) Judge Weber imposed a $9 million fine and a five-year term of probation. He has delayed entering the final judgment and conviction pending resolution of outstanding petitions regarding claims for victim status under the CVRA.[3]

---

[3] On February 19, 2010, several purchasers of packaged ice filed a mandamus petition and appeal, asserting that indirect purchasers of packaged ice were victims under the CVRA. *In re Acker*, Nos. 10-3159, 10-3160, 2010 WL 624128, at *1 (6th Cir. Feb. 22, 2010). We denied the petition and dismissed the appeal, determining that we need not determine whether the indirect purchasers "were 'directly and proximately harmed' by the actions of Arctic Glacier" because the district court actually had afforded them the status of crime victims and that the district court had "reasonably concluded that the difficulty of determining losses [of the indirect purchasers] would so prolong and complicate the proceedings that any need for restitution would be outweighed by the burden on the sentencing process." *Id.* at *2.

On February 24, 2010, McNulty brought this petition for mandamus relief from the district court's February 22, 2010 denial of his request for victim status under the CVRA.

**II.**

If the district court in a criminal proceeding denies relief sought under the CVRA, "the movant may petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). The court of appeals "shall take up and decide such application forthwith within 72 hours[4] after the petition has been filed." *Id.* As we held recently in a case arising out of the same criminal case,

> the plain language of the statute compels application of the normal mandamus standards. The issuance of a writ of mandamus is relief that is governed by well-established standards. The use of that specific term in the statute, in conjunction with the truncated period in which the court of appeals is to review such a petition and act upon it, convinces us that those usual standards apply here.

*In re Acker*, 2010 WL 624128, at *1 (internal citation omitted).

However, "a writ of mandamus is an extraordinary remedy that we will not issue absent a compelling justification." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009). Traditionally, writs of mandamus were used "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 323-24 (6th Cir. 2009) (quoting *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Thus, "only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted)). And, because mandamus is a discretionary remedy, a Court may decline to issue the writ if it finds that it would

---

[4]We would like to express our frustration that Congress has permitted the courts only 72 hours in which to read, research, write, circulate, and file an order or opinion on these petitions for a writ of mandamus. Especially in cases such as this, where the law is relatively new and untested, both litigants and future courts would benefit from additional time to prepare a clear and well-reasoned decision.

not be "appropriate under the circumstances" even if the petitioner has shown he is "clear[ly] and indisputabl[y]" entitled to it. *Id.* at 381.

## III.

As in *Acker*, McNulty was "allowed a full opportunity for participation" in the proceedings, including an opportunity to submit testimony and evidence at sentencing. *Acker*, 2010 WL 624128, at *2. McNulty argues that the district court abused its discretion in finding that he did not qualify as a "victim" pursuant to the CVRA, which would permit him to receive restitution for the relevant harm, and, alternatively, in not ordering restitution to him as part of Arctic Glacier's sentence of probation.

### A.       Crime Victims' Rights Act

A "crime victim" is defined under the CVRA as a person "directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e).[5] Because our Court has not had the opportunity to determine whether a petitioner qualifies as a "victim" pursuant to the CVRA, we look to our sister Circuits for guidance.[6]

---

[5]Victims have the following rights under the CVRA:

(1) The right to be reasonably protected from the accused.
(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.
(5) The reasonable right to confer with the attorney for the Government in the case.
(6) The right to full and timely restitution as provided in law.
(7) The right to proceedings free from unreasonable delay.
(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a). The CVRA also provides that the government must make its best efforts to "see that crime victims are notified of, and accorded, the rights described in subsection (a)," including the "reasonable right to confer with the attorney for the Government in the case" and the right to be "treated with fairness." 18 U.S.C. § 3771(c)(1).

[6]We do have substantial case law interpreting related statutes involving restitution to the victims of crime, the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. McNulty cites cases interpreting these statutes as precedential to findings under the CVRA. While we find our case law interpreting the VWPA and the MVRA to be persuasive, it is not binding on our interpretation of the CVRA for the purposes of

"The requirement that the victim be "directly and proximately harmed" encompasses the traditional 'but for' and proximate cause analyses." *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009) (citing *In re Antrobus*, 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring) (noting that "direct[ ]" harm encompasses a "but-for" causation notion that is different from proximate harm)). "The necessary inquiry is [] fact-specific[.]" *Id.* (citations omitted).

The CVRA "instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties. Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *In re*

---

determining whether an individual is a "crime victim," as the definition differs under the statutes.

A "crime victim" under the CVRA is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense[.]" 18 U.S.C. § 3771(e). The House Committee report did not define that term and there was no Senate Committee report on the CVRA. "However, one of the chief sponsors of the bill, Sen. John Kyl, has explained that 'the CVRA's definition of a crime victim is based on the federal restitution statutes,' citing the [VWPA and the MVRA]." *United States v. Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 460-61 (D.N.J. 2009) (citing The Honorable John Kyl et al., *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 LEWIS & CLARK L. REV. 581, 594 & n.65 (2005)).

For purposes of the MVRA and the VWPA:

> [T]he term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2), 18 U.S.C. § 3663(a)(2).

The two main differences between these definitions of victim are: (1) the CVRA definition does not contain the qualifier "for which restitution may be ordered" and thus applies to all federal criminal prosecutions regardless of whether the offense qualifies for restitution; and (2) the VWPA and the MVRA definition includes the phrase "including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d at 461-61 (examining in detail the history and legislative history of the three statutes and concluding that "the CVRA definition would be interpreted to include the expansive clause because of the Congressional and case law history of that clause under the VWPA").

Whether the CVRA's definition of a "crime victim" is best understood as co-extensive with the MVRA and VWPA definitions regarding offenses qualifying for restitution will only be fully developed through further cases in this Circuit. Because the CVRA does not include the specific language included in the other statutes, which predate the CVRA, we cannot assume that Congress intended the definitions to be identical. However, given the definition of conspiracy, "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose", BLACK'S LAW DICTIONARY (8th ed. 2004), in cases involving a conspiracy, it appears logical that those directly and proximately harmed by criminal conduct in the course of the conspiracy beyond the overt act required to prove the conspiracy would be victims under CVRA, just as they would be under the VWPA and the MVRA. Thus, we find our case law construing the VWPA and the MVRA persuasive, both for how the CVRA is to be interpreted procedurally and for when an individual qualifies as a victim of a conspiracy.

*Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008) (CVRA mandamus petition; circuit court held that mortgage borrowers were CVRA victims of conspiracy to deprive bank of honest services, where defendants were bank officer and co-conspirator whose offense caused borrowers to pay excess fees that defendants pocketed). *See, e.g.*, *United States v. Johnson*, 440 F.3d 832, 835-39, 849-50 (6th Cir. 2006) (victims of four predicate criminal acts in RICO conspiracy conviction were MVRA victims, where district court found trial evidence established by a preponderance of the evidence that defendant was actively involved in all four predicate acts); *United States v. Washington*, 434 F.3d 1265, 1266-70 (11th Cir. 2006) (police department and another property owner were MVRA victims as to police car and property damaged during chase of defendant fleeing after bank robbery); *Moore v. United States*, 178 F.3d 994, 1001 (8th Cir. 1999) (bank customer was MVRA victim of attempted bank robbery; defendant had stood within six feet of customer and pointed sawed-off gun at him); *but see, e.g.*, *In re Rendon Galvis*, 564 F.3d at 175 (mother was "not a crime victim under the CRVA because the harm to her son was not a direct and proximate result of conspiring to import cocaine into the United States, which is the crime of conviction [t]here.").

Thus, in the instant case, the issue becomes whether McNulty was directly and proximately harmed by criminal conduct in the course of the conspiracy or if the actions taken by defendants in the underlying case which allegedly harmed McNulty were merely ancillary to the conspiracy.

In making this determination, we must (1) look to the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were "directly and proximately harmed as a result of the commission of [that] Federal offense." *Atl. States Cast Iron Pipe Co.*, 612 F. Supp. 2d at 536 (collecting cases stating that this is the methodology used by courts in making this determination).

Here, the offense of conviction is violation of the Sherman Act, 15 U.S.C. § 1, which states:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

"To sustain a § 1 claim, plaintiffs must prove . . . two essential elements:  (1) That defendants entered into a contract, combination or conspiracy; and  (2) That such contract, combination or conspiracy amounted to an unreasonable restraint of trade or commerce among the several States." *Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1118 (6th Cir. 1983) (citations omitted).

In the plea agreement and at the sentencing hearing, Arctic Glacier pled guilty[7] to "allocat[ing] packaged-ice customers in southeastern Michigan and the Detroit, Michigan metropolitan area." (Tr. at 7.)  Thus, purported victims of the conspiracy to violate the Sherman Act must show that they were directly and proximately harmed by the defendants' entry into a conspiracy or by the defendants' actions in unreasonable restraint of interstate commerce.

Here, we agree with the district court's holding that McNulty is not a victim for the purposes of the CVRA.  The alleged harm to McNulty stemmed from his firing for refusing to participate in the conspiracy and his "blackballing" from employment with packaged-ice companies until he stopped working with the government in exposing the conspiracy.  If proven, these would indeed be harms to McNulty, but they are not criminal in nature, nor is there any evidence that they are normally associated with the crime of antitrust conspiracy.

---

[7]Because Arctic Glacier "was convicted pursuant to a guilty plea rather than by a jury, the court should look to the plea agreement, the plea colloquy, and other statements made by the parties to determine the scope of the 'offense of conviction' for purposes of restitution." *United States v. Elson*, 577 F.3d 713, 723 (6th Cir. 2009) (citations omitted) (applying the MVRA).

To fire an employee and prevent a former employee from being hired by another company may be illegal under the civil law, but they are not inherently criminal actions, nor are they actions inherent in the crime of conspiracy to violate antitrust laws to which Arctic Glacier pled. Civil, not criminal, remedies are available to redress these actions.[8]

Additionally, that the harm must be "direct" requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked. McNulty's firing is not sufficiently related to the offense of conviction for McNulty to qualify as a victim under the CVRA. While the escape from a bank robbery which damages a vehicle, *Washington*, 434 F.3d at 1266-70, or a gun being pointed at an innocent bystander in the course of a robbery, *Moore*, 178 F.3d at 1001, are direct and proximate harms to innocent bystanders that are not part of the elements of the crime, they are directly related to the crime itself (and are, in many instances, crimes in and of themselves). McNulty's firing and blackballing from the industry, if proved, are ancillary to the actions involved in forming a conspiracy and restraining interstate commerce.[9] Certainly, McNulty's right to the writ is not "clear and indisputable."

Thus, the district court did not abuse its discretion in finding that McNulty was not a victim of the crime pursuant to the CVRA.

### B.     Mandatory Victims Rights Act

McNulty further argues that the district court abused its discretion in holding that the fact that Arctic Glacier's crime of conviction, a violation of 15 U.S.C. § 1, is not

---

[8]McNulty has a civil action pending against Arctic Glacier based on these same actions. As the district court noted in the sentencing hearing, though McNulty did not mention it in any of his statements to the court, "there is a civil action available to him." (Tr. at 55.) The CVRA was not enacted to short circuit civil litigation to those with valid civil remedies available. Furthermore, the government agreed in the plea arrangement that the fines imposed against Arctic Glacier would be back-loaded and should a civil plaintiff obtain a judgment against Arctic Glacier that could not be satisfied alongside the criminal fine, the government would waive collection of the fine. (Tr. 75, 99, 143-35.)

[9]Though it is unlikely, McNulty's firing and subsequent blackballing in the packaged-ice industry may have supported a charge of obstruction of justice. However, for purposes of the CVRA definition of "crime victim," the only material federal offenses are those for which there is a conviction or plea. *See e.g.*, *Hughey v. United States*, 495 U.S. 411, 418 (1990); *In re Rendon Galvis*, 564 F.3d at 175.

among the crimes enumerated under 18 U.S.C. § 3663 prevented McNulty from qualifying for restitution.

A court may order restitution as a condition of probation "not subject to the limitation of section 3663(a)." *United States v. Lexington Wholesale Co., Inc.*, 71 F. App'x 507, 508-09 (6th Cir. 2003) (citing *Gall v. United States*, 21 F.3d 107 (6th Cir. 1994)). Section 5E1.1(a)(2) of the Sentencing Guidelines provides:

> In the case of an identifiable victim, the court shall-(2) impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section.

U.S.S.G. § 5E1.1(a)(2).

Just after finding that McNulty was not a victim of Arctic Glacier's conduct, the district court acknowledged its ability to impose the condition of restitution to a sentence of probation. (Tr. at 119.) Thus, it is clear that the district court understood that it was permitted to impose the condition of restitution to a sentence of probation.

Additionally, as we previously found, McNulty is not "an identifiable victim" of the crime requiring the court to require restitution. The alleged harms against McNulty were the firing and blackballing; both of which may be illegal, but neither of which is criminal in nature nor directly related to the crime of conspiracy to commit antitrust violations. Thus, the district court did not abuse its discretion in choosing not to grant McNulty restitution.

**IV**.

We therefore we **DENY** the petition for mandamus relief.