NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0412n.06

No. 17-3972

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

STEVEN C. SCUDDER,

      Defendant-Appellant.

FILED
Aug 15, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

BEFORE:     BOGGS, CLAY, and ROGERS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Steven Scudder was convicted of wire fraud, in violation of 18 U.S.C. § 1343, for his role in a Ponzi scheme. The district court sentenced Scudder to 14 months' imprisonment and imposed restitution in the amount of $425,030, under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. On appeal, Scudder raises various challenges to the district court's restitution order. For the reasons set forth below, we **AFFIRM** the district court's judgment.

**FACTUAL AND PROCEDURAL HISTORY**

In July 2013, Scudder, a licensed attorney, began working with William Apostelos, a businessman who ran an investment firm called WMA Enterprises. In particular, Scudder agreed to serve as trustee of the WMA Trust, which provided security to individuals who invested with WMA Enterprises. The concept was simple: in the event of a default by Apostelos' firm, the

WMA Trustee would liquidate the trust and distribute its assets to the firm's secured investors. This security helped make WMA Enterprises an apparently safe investment vehicle.

Over time, however, Scudder grew concerned about Apostelos' business practices. These concerns prompted Scudder to resign as trustee on June 23, 2014, which he did by notifying Apostelos. Three months later, on September 22, 2014, he filed public notice with the Clark County, Ohio, Recorder's Office that he had been replaced as trustee on June 23. Pursuant to Ohio's recording statute, the "whole world" was deemed to have "constructive notice . . . of the existence and contents of" Scudder's filing. *See* Ohio Rev. Code § 1301.401(B).

As it turns out, Scudder's concerns were well-founded: Apostelos was running a Ponzi scheme. Had Scudder simply parted ways with Apostelos after his resignation in June 2014, he might have avoided the legal fallout from the ensuing collapse of Apostelos' companies. Unfortunately, Scudder did not make a clean break with Apostelos. Instead, after he resigned in June but before his resignation was publicly recorded in September, Scudder participated in a phone call with Apostelos and an investment advisor, M.P. During the call, Scudder falsely told M.P. that he remained the WMA Trustee, which gave the trust an air of legitimacy given his status as a lawyer. M.P.'s clients later invested heavily with WMA Enterprises. These investments included a $1,099,000 loan made on October 15, 2014 (the "October loan").

Sometime after February 2015, Apostelos' Ponzi scheme collapsed. M.P.'s clients recouped some of the money from the October loan, but ultimately lost $425,030. Scudder himself had invested with Apostelos; he lost $225,000. Others fared worse. All told, investors in Apostelos' businesses lost over $30 million.

2

In January 2017, Scudder pleaded guilty to wire fraud, in violation of 18 U.S.C. § 1343. The charge was based entirely on Scudder's phone call with M.P., in which he falsely claimed that he remained trustee of the WMA Trust. The plea agreement stated that "based, in part, on Mr. Scudder's false representation," M.P.'s clients "invested over $1 million with Apostelos' company," including the October loan. (R. 9, plea agreement, PageID# 28–29.) The PSR contained nearly identical language; it stated that "on Scudder's false representation, . . . individuals advised by M.P." provided the October loan. (PSR at ¶ 28.) The PSR recommended that the district court impose restitution under the MVRA. The recommended amount was $425,030, corresponding to the amount of loss suffered by M.P.'s clients.

During sentencing, Scudder vigorously pressed a specific legal objection to the PSR: that he should not owe any restitution because, "as a matter of law," investors could not have relied on his misrepresentation to M.P. (PSR Addendum at 1.) Scudder pointed out that under Ohio's recording statute, his September 22 public notice of resignation informed the "whole world" that he had resigned as trustee in June 2014. According to Scudder, this put M.P.'s clients on constructive notice that, contrary to his statements to M.P., he had not actually been the trustee in September 2014. In Scudder's words,

> [t]he investors and MP could have simply checked the records in Clark County and found out that Scudder was no longer the trustee. . . . Money sent after the notice was filed in the recorder's office means that the alleged victim was not directly or proximately harmed by Scudder's conduct. Instead the victims were directly and proximately harmed by their failure to exercise due diligence . . . .

(*Id.* at 1–2.)

In a written ruling, the district court rejected Scudder's challenge. The court held that public notice of Scudder's resignation did not "cut off his responsibility for the victims' losses"

because, regardless of the notice, M.P.'s clients "did invest based on Defendant's false representations." (R. 29, Restitution Order, PageID# 125.) In the district court's view, it was "immaterial" that M.P.'s clients "apparently failed to scour the public record or otherwise take steps to debunk [Scudder's] fraudulent statements to them." (*Id.* at 126.) The district court adopted the restitution amount provided in the PSR. In addition, the district court sentenced Scudder to 14 months' imprisonment, to be followed by two years of supervised release.

On appeal, Scudder challenges only the restitution award, raising two arguments. First, he renews his argument based on Ohio's recording statute. Second, he argues, for the first time, that the government did not prove, and the district court did not sufficiently find, that his misrepresentation mattered to M.P.'s clients in a practical sense, resulting in the specific loss amount listed in the judgment.

## DISCUSSION

### Standard of Review

"We review de novo the question of whether restitution is permitted under the law, and review the amount of a restitution award for abuse of discretion." *United States v. Boring*, 557 F.3d 707, 713 (6th Cir. 2009). However, where a party's challenge to restitution is raised for the first time on appeal, the claim is reviewed only for plain error. *See United States v. Cox*, 665 F. App'x 457, 461 (6th Cir. 2016). Under that standard, the party must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation marks and citation omitted).

**Analysis**

The MVRA requires a district court to "order . . . that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. § 3663A(a)(1). The term "victim" means any individual "directly and proximately harmed as a result of the commission" of the offense. § 3663A(a)(2).

In the instant case, Scudder raises two arguments. First, he argues that, as a matter of law, his public notice of resignation prevented M.P.'s clients from relying on his prior misrepresentation about his status as the WMA Trustee. This argument is based entirely on the text of Ohio's recording statute, which provides that the "whole world" is deemed to have constructive notice of any document—including Scudder's notice of resignation—that was properly recorded in Ohio. Second, Scudder argues that the government did not prove, and the district court did not sufficiently find, that M.P.'s clients relied on his misrepresentation in a practical sense in making the October loan. We consider each issue in turn.

A. **Scudder's Decision to Record his Resignation at the Clark County Recorder's Office**

Under the MVRA, "[t]he requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010) (quotation marks and citation omitted).[1] In general, "[t]he necessary inquiry is fact-specific." *Id*. (quotation marks, alterations, and citation omitted). In the instant case, however, there was no need for a comprehensive inquiry: Scudder admitted in his plea agreement that M.P.'s clients provided the October loan "based, in part, on Mr. Scudder's false

---

[1] Although *In re McNulty* interpreted the Crime Victims' Rights Act, 18 U.S.C. § 3771, rather than the MVRA, its analysis is relevant to both statutes because they contain identical language regarding causation. *Compare* 18 U.S.C. § 3663A(a)(2) (MVRA), *with* 18 U.S.C. § 3771(e)(2)(A) (CVRA).

representation" about his status as the WMA Trustee. (R. 9, plea agreement, PageID# 28–29.) In other words, Scudder conceded that his fraud caused M.P.'s clients to invest with WMA Enterprises. Thus, he effectively conceded that the MVRA should apply. *See United States v. Louchart*, 680 F.3d 635, 637 (6th Cir. 2012) (holding that a district court can rely at sentencing on facts "explicitly admitted to by the defendant" in a plea agreement).

Scudder is not saved by Ohio's recording statute. According to Scudder, it is black letter tort law that "public notice correcting a misrepresentation precludes reliance on the prior misstatement and makes any reliance after the correction unjustifiable." (Def.'s Br. at 18.) But even accepting this view of tort law, it is not controlling in the criminal restitution context. As the Supreme Court has explained, our role in interpreting a criminal restitution statute is "to define a causal standard that effects the statute's purposes, not to apply tort-law concepts in a mechanical way[.]" *Paroline v. United States*, 134 S. Ct. 1710, 1729 (2014). Accordingly, restitution under the MVRA is required where there is "some direct relationship between the injury asserted and the injurious conduct alleged." *United States v. Church*, 731 F.3d 530, 538 (6th Cir. 2013) (quoting *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012)). "[T]he defendant's conduct need not be the sole cause of the loss, but it must be a material cause[.]" *Id.* (alterations omitted) (quoting *Evers*, 669 F.3d at 659). This standard is easily met in the instant case because Scudder explicitly admitted to causing the investor losses. He cannot avoid the consequences of his admission by making technical arguments based on a recording statute.

In addition, placing controlling weight on Ohio's recording statute would create tension with other aspects of restitution law. First, although this Court has not addressed the issue, it appears doubtful that an investor's negligence would preclude a criminal restitution award. *See, e.g.*, *United States v. Ross*, 607 F. App'x 746, 747 (9th Cir. 2015); *United States v. Guy*, 335 F.

App'x 898, 900 (11th Cir. 2009); *United States v. Zafar*, 291 F. App'x 425, 429 (2d Cir. 2008); *United States v. Rosby*, 454 F.3d 670, 677 (7th Cir. 2006). Yet Scudder's proposed rule would have exactly that effect. Although he frames the issue in terms of causation, his underlying argument simply blames the victims for not checking the Clark County records. In Scudder's view, M.P.'s clients were "directly and proximately harmed by their failure to exercise due diligence[.]" (PSR Addendum at 2.)

Second, Scudder's proposed rule would have restitution awards turn on the vagaries of each state's particular recording statute. For example, identically situated defendants located in different states would face different restitution obligations depending on whether their state's recording statute supplies notice to the "whole world," notice to "everyone in the state," or notice to "everyone in the county." Similarly, a recording statute might provide "conclusive" evidence of notice, or merely "presumptive" evidence. Given that these minor differences seem divorced from the fundamental question underlying the MVRA—whether the defendant directly and proximately caused the victim's loss—they should not play a controlling role in the causation analysis. It would elevate form over substance to allow a defendant to cite a broadly worded recording statute as a trump card.

Third, this Court has held that the causation inquiry "is fact-specific." *In re McNulty*, 597 F.3d at 350 (quotation marks, alterations, and citation omitted). Yet Scudder would have us ignore the facts and focus entirely on a legal fiction: that M.P.'s investors knew of his resignation by virtue of his public filing. This makes little sense. There was ample room for Scudder to argue that, as a factual matter, M.P.'s investors did not rely on his misrepresentation. For example, Scudder could have argued that M.P.'s clients did not care about his status as a lawyer. Or that their investment decisions were based entirely on other factors. Or that they probably did learn

about his resignation, either through his public filing or through some other means. But Scudder did none of these things. Instead of engaging in the fact-specific inquiry contemplated by the MVRA, he seeks to short-circuit that inquiry entirely. We reject his effort. Scudder "caused" the investor losses because he admitted in his plea agreement that those losses were "based, in part" on his misrepresentation. Nothing more was required.

### B.      Actual Investor Reliance

In the district court, Scudder vigorously pressed his restitution challenge based on Ohio's recording statute. In addition, he raised two other arguments that he does not pursue on appeal: (1) that investors caused their own loss by making what they should have known would be an unsecured loan; and (2) that investors caused their own loss by failing to properly document that loan. At no point during the district court proceedings did Scudder dispute that he had caused the investor losses in a practical sense, as provided in his plea agreement and in his PSR. Nor did he dispute the PSR's computation of the amount of loss. Therefore, it is unsurprising that the district court's findings on these issues tracked the findings made in the PSR. Specifically, the district court determined that M.P.'s clients "did invest based on Defendant's false representations" and it imposed the PSR's recommended restitution amount. (R. 29, Restitution Order, PageID# 125–26.)

On appeal, Scudder takes issue with these rulings. For the first time, he argues that "there is *no* evidence that the investors *actually did* rely on" his misrepresentation. (Def.'s Br. at 25 (emphasis in original).) He notes that no investors testified that their decisions were "based on [their] belief that a lawyer managed the WMA land trust" and that, more generally, the government did not even prove that the October loan was secured by the WMA Trust. (*Id.* at 27.) In addition, Scudder faults the district court for not requiring "reliable and specific evidence" to substantiate

the amount of loss, (*id.* at 29), thereby "default[ing]" its obligation to "ensure that defendants are sentenced based on accurate information," (*id.* at 35).

Unfortunately for Scudder, the district court was not required to make detailed factual findings in these circumstances. In general, a district court "may accept any undisputed portion of the presentence report as a finding of fact[.]" Fed. R. Crim. P. 32(i)(3)(A). It must make specific rulings only on the "disputed" or "controverted" portions of a PSR. *See* Fed. R. Crim. P. 32(i)(3)(B). In the instant case, the PSR was clear: it stated that "on Scudder's false representation, . . . individuals advised by M.P." provided the October loan. (PSR at ¶ 28.) The PSR further recommended that the district court impose restitution in the amount of $425,030. Despite these unambiguous statements, Scudder did not dispute that he had caused the investor losses in a practical sense, nor did he contest the amount of those losses. Accordingly, the district court was entitled to rely on the PSR's findings on these issues.

Scudder admits that he did not previously identify the concerns he now raises, but argues that they are nonetheless preserved because he did inform the district court of *other* challenges to restitution—principally, he repeatedly pressed his recording act argument. However, that was not enough. Under Rule 32(i)(3)(A) and (B), a district court may accept a PSR's factual findings unless they are "controverted." This Court has explained that "'controverted' matters refer to those that are disputed or opposed by reasoning." *Vonner*, 516 F.3d at 388 (quotation marks, alterations, and citation omitted). "[A] defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (citation omitted). Instead, the defendant "must produce some evidence that calls the reliability or correctness of the alleged facts into question." *Id.* (citation omitted). Absent such evidence, "the judge may rely entirely on the PSR." *Id.* (citation omitted).

In the instant case, Scudder did not provide the district court with any "reason" to doubt the PSR's finding that he caused the investor losses in a practical sense, nor did he provide any "reason" to question the PSR's computation of the loss amount. Indeed, he did not raise these issues at all, let alone cite evidence undermining the PSR's findings. As a result, the district court was permitted to rely on the PSR. Although Scudder did press his recording act challenge in the district court, that did not preserve unrelated restitution claims. As we explained in *United States v. McGee*, a district court's fact-finding obligations are triggered only as to the specific issues identified by the defendant. *See* 529 F.3d 691, 700–01 (6th Cir. 2008) (holding that the defendant "did not sufficiently controvert the facts contained in his PSR" where the defendant "very clearly led the court to believe—whether intentionally or not—that his only objection was to the *relevancy*, and not the *veracity*, of the disputed portions of his PSR" (emphasis in original)). A defendant cannot transform a narrow challenge in the district court into a broad argument on appeal.

For all these reasons, the district court did not err at sentencing, let alone plainly err. The PSR explicitly stated that the October loan was made "on Scudder's false representation[.]" (PSR at ¶ 28.) The PSR also recommended a specific restitution amount: $425,030. Any objection to these findings should have been made at sentencing. Because Scudder failed to object, the district court was entitled to rely on the PSR.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.